HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHAN MYHRVOLD,<br><br>      Movant,<br><br>   v.<br><br>LODSYS GROUP, LLC, et al.,<br><br>      Respondents. | CASE NO. C13-1173RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of Movant Nathan Myhrvold for a protective order quashing a deposition subpoena from Respondent Lodsys Group, LLC.[1]  For the reasons stated below, the court GRANTS the motion (Dkt. # 1) and quashes the subpoena.  The court GRANTS the parties' motions to seal (Dkt. ## 3, 14) but directs Mr. Myhrvold to take additional steps, which the court describes in Part III.B of this order, or the court will unseal some of those documents.

## II. BACKGROUND

Lodsys has filed two lawsuits in the United States District Court for the Eastern District of Texas against companies who allegedly infringe software patents that Lodsys owns.  Those companies develop "apps" for Apple, Inc., and Apple has intervened in the

---

[1] There are Respondents other than Lodsys, but they have not submitted anything to the court. Lodsys and Mr. Myhrvold agree that the other Respondents are nominal parties, named only because they indicated that if Mr. Myhrvold submits to a deposition, they would ask questions as well.

ORDER – 1

Texas suits on behalf of its developers. Apple has a license to use the technology covering the patents-in-suit, and it contends that its app developers can also take refuge in the license. Lodsys disagrees.

Apple licensed the patents-in-suit when Intellectual Ventures, a Washington-based entity, still owned the rights to the patents. The Apple License, which it entered in February 2004, is similar to a license Intellectual Ventures issued to Microsoft Corporation in October 2005.

Lodsys insists that the terms of the Apple license are relevant to determining whether Apple's app developers can benefit from it. That is debatable. Apple apparently contends that the doctrines of patent exhaustion and implied license are sufficient to resolve the dispute over the Apple License's impact on the Texas litigation.

Lodsys also insists that negotiations that Intellectual Ventures had with Microsoft over the terms of the Microsoft License are relevant to interpreting the terms of the Apple License. That is a stretch; although parole evidence of Intellectual Ventures' license with Microsoft might be relevant to interpreting the Microsoft License, it is much more difficult to plausibly argue that the same negotiations are relevant to the interpretation of the Apple License. Among other things, the negotiations took place *after* the Apple had finalized its license. Moreover, when parole evidence is relevant, it is relevant as evidence of the mutual intent of the parties. The mutual intent of Intellectual Ventures and Microsoft has no obvious bearing on the mutual intent of Intellectual Ventures and Apple months or years earlier. It is possible that Lodsys can ultimately draw a plausible connection between the Microsoft License and the resolution of the Texas litigation, but on this record, that drawing would resemble the schematic of a Rube Goldberg invention.

Last fall, Lodsys issued subpoenas from this District to Intellectual Ventures and its CEO, Nathan Myhrvold. Intellectual Ventures produced a deponent to testify, via Federal Rule of Civil Procedure 30(b)(6), on its behalf. The deponent was no flunky; he

ORDER – 2

was Peter Detkin, Vice-Chairman of Intellectual Ventures and one of its co-founders. Intellectual Ventures also produced documents for Lodsys.

Mr. Myhrvold has declined to respond to his subpoena. The parties have agreed that the deposition would be limited to three hours at a location of Mr. Myhrvold's choosing. They also negotiated a series of extensions to his deposition date, but those negotiations reached their end this summer. Mr. Myhrvold then filed a motion for a protective order. The court now considers that motion, along with two motions to seal documents related to that motion.

### III.   ANALYSIS

#### A.   Motion for Protective Order

Civil litigants are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A discovery request need not call for evidence that would be admissible at trial, so long as the request "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The court can limit discovery for numerous reasons, including that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

These general discovery limitations apply with equal force to subpoenas to third parties. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). A court can quash or modify a subpoena that does not seek information that falls within the broad scope of permissible discovery. *Id.* at 680. A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense" on the subpoena's target, and the court from which the subpoena issues must enforce this restriction. Fed. R. Civ. P. 45(c)(1); *see also* Fed. R. Civ. P. 45(c)(2)(B)(ii) (noting that when issuing an order resolving a motion to compel subpoena compliance, the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from

ORDER – 3

compliance"). The apparent relevance of the information a subpoena seeks informs the extent to which its burden is undue, and the court must balance relevance, the requesting party's need for the information, and the hardship to the subpoena's target. *Google*, 234 F.R.D. at 680. The party opposing the subpoena bears the burden of showing that it is unduly burdensome. *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). The court's decision on a motion to quash a subpoena or a motion to compel compliance is a matter of discretion. *Mattel Inc. v. Walking Mt. Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Mr. Myhrvold's argument, boiled down, is threefold. He is much too busy to be deposed; he has no relevant information or has information of such attenuated relevance that it cannot justify the burden a deposition would impose; and the deposition of Mr. Detkin was sufficient to satisfy Lodsys's legitimate needs, if it has any.

The court imagines that CEOs are busy people, and that Mr. Myhrvold is no exception. The court is forced to imagine, however, because it does not have a shred of evidence from Mr. Myhrvold. In the court's experience, the following categories (which overlap substantially) consist of people who are also busy: parents of young children, people who work for a living, people who volunteer their time, people who are caring for friends and relatives, people who are searching for jobs, people who are struggling with health concerns, and people who must travel frequently. Lots of people are busy. If a busy person wishes to avoid complying with a subpoena on the basis that he is *too* busy, he should submit evidence to the court that he cannot spare a few hours of his time. Mr. Myhrvold has not done so. If he (or his counsel) believed that the mere invocation of the title "CEO" would earn deference, they were mistaken. The President of the United States can be deposed, *see, e.g., Clinton v. Jones*, 520 U.S. 681 (1997); so too can a CEO, particularly one who declines to provide any evidence of his inability to appear for deposition.

ORDER – 4

1  Every deposition carries some burden, and if that burden is justified only by the
2  quest for information of little to no relevance, that burden is undue.  Whereas Mr.
3  Myhrvold provides no evidence to support his claim that he is too busy, he offers some
4  evidence and substantial argument that Lodsys will obtain little or no relevant
5  information from him.  As the court noted in the previous section of this order, the
6  sequence of legal steps that it takes to connect information about the Microsoft License to
7  the Texas litigation at issue is attenuated, to say the least.  On this record, the court is
8  convinced that the information Lodsys seeks is of scant relevance.  There are no doubt
9  circumstances when one's negotiation of a contract with one party bears on the
10 interpretation of a similar and later-negotiated contract with another party, but those
11 circumstances require elaboration.  Lodsys's elaboration is unconvincing.  It is not
12 Lodsys's burden to show that its subpoena would impose an appropriate burden, but Mr.
13 Myhrvold's arguments are sufficient to shift the burden to Lodsys to explain why Mr.
14 Myhrvold has relevant information.

  Whatever relevance the information Lodsys seeks might have, its Rule 30(b)(6)
deposition of Mr. Detkin should have sufficed.  Lodsys contends that Mr. Myhrvold has
unique information because he sent two emails to high-ranking Microsoft executives (in
2005) that discussed negotiations over license terms that are directly relevant to the Texas
litigation.  Lodsys has evidence that Mr. Myhrvold also had offline conversations about
the same topic with the same executives.  Mr. Detkin admitted during his deposition that
he had not discussed the issue with Mr. Myhrvold, but that is not dispositive.  If Mr.
Detkin's failure to speak with Mr. Myhrvold left him unable to discharge his
responsibilities under Rule 30(b)(6), Lodsys was free to move to compel an additional
Rule 30(b)(6) deposition.  On this record, the court finds that whatever marginal
information that Mr. Myhrvold alone could provide does not justify the burden of
conducting a second deposition of a person associated with Intellectual Ventures.

ORDER – 5

**B.     Motions to Seal**

Mr. Myhrvold filed a motion to seal, in its entirety, a document consisting of excerpts from Mr. Detkin's Rule 30(b)(6) deposition. Lodsys did not oppose that motion. Lodsys filed a motion to seal every exhibit it included in support of its opposition to the motion for protective order. Those documents consist of the two emails from Mr. Myhrvold to Microsoft executives that the court has already discussed, another chain of emails involving Mr. Myhrvold, the Apple License, the Microsoft License, and another collection of excerpts from Mr. Detkin's Rule 30(b)(6) deposition.

The court begins its discussion of the motions to seal with its local rules, specifically Local Rule 5(g), which acknowledges the "strong presumption of public access to the court's files." Local Rules W.D. Wash. LCR 5(g). For a non-dispositive motion like this one, a party need only show "good cause" for maintaining a document under seal. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Because filing *anything* under seal is disfavored, the rules require the parties to meet and confer to "explore all alternatives to filing a document under seal," including redaction and other steps to eliminate the need to file under seal or to at least minimize the amount of sealed information. LCR 5(g)(1), 5(g)(3)(A). Only a party "who cannot avoid filing a document under seal" should attempt to do so. LCR 5(g)(1)(B). A party must "minimize the number of documents it files under seal and the length of each document it files under seal." LCR 5(g)(4).

Lodsys has no interest in keeping any of these documents under seal. It filed its own motion only to meet its obligations under a protective order in the Texas litigation. Intellectual Ventures is the only party before the court with an interest in keeping these documents under seal, although the court notes that several of the documents appear to implicate the interests of absent parties (like Microsoft and Apple) who have been afforded no opportunity to assert their interests.

ORDER – 6

No one at Intellectual Ventures provided any evidence regarding the necessity of maintaining these documents under seal. It relied instead on its outside counsel, which is virtually always a bad idea. Outside counsel presumably has no knowledge, other than that which it obtained via the attorney-client relationship, of Intellectual Ventures' confidentiality needs.

Fortunately for Mr. Myhrvold, some documents reveal sufficient information by themselves to demonstrate good cause to keep them under seal. Mr. Myhrvold's emails, for example, discuss not only the negotiation of the Microsoft License, but the investment structure of Intellectual Ventures. Those discussions are in sufficient detail that the need for confidentiality is apparent (or at least apparent enough to satisfy the "good cause" standard). The same is true of the Apple License and the Microsoft License, which also implicate the interests of absent parties who have had no opportunity to assert their interests. As to the excerpts of Mr. Detkin's deposition, there are a few instances where he discusses information that is perhaps appropriate to keep under seal. There are many more instances, however, of testimony that is either not obviously about a sensitive topic or is obviously not about a sensitive topic. There is no good cause for keeping that information under seal. As an accommodation to Mr. Myhrvold, the court will maintain those excerpts under seal provided that Mr. Myhrvold files a new motion to seal no later than October 10, 2013. That motion shall, at a minimum, provide a redacted version of both sets of excerpts that can be filed publicly, along with evidence or argument sufficient to establish that the redacted portions should be filed under seal. If Mr. Myhrvold does not file a motion to seal by October 10, the court will unseal the excerpts in their entirety.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Mr. Myhrvold's motion for a protective order. Dkt. # 1. The court QUASHES Lodsys's subpoena to Mr. Myhrvold.

ORDER – 7

The court GRANTS both motions to seal (Dkt. ## 3, 14), subject to Mr. Myhrvold's submission of a renewed motion to seal in compliance with this order.

The court will close this subpoena enforcement action either when it resolves Mr. Myhrvold's renewed motion to seal, or, if he submits no motion, on October 11.

DATED this 27th day of September, 2013.

_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8